PRESTWICK, INC.
v.
DON KELLY BUILDING COMPANY.
Civ. A. No. 19908.

United States District Court
D. Maryland.
March 7, 1969.

Bernard J. Sachs, Goodman, Meagher & Enoch, Baltimore, Md., and George A. Garvey, B. Edward Shlesinger, Jr., Shlesinger, Arkwright, Garvey & Dinsmore, Arlington, Va., for plaintiff.

Gerald E. Topper, Baltimore, Md., and F. Leroy Houck, Jr., Suitland, Md., for defendant.

## MEMORANDUM OPINION

NORTHROP, District Judge.

This is a suit for trademark infringement and unfair competition. The plaintiff, Prestwick, Inc., is the holder of the trademark "Tantallon", United States Patent Office Principal Register No. 855,715, registered August 27, 1968.[1] Plaintiff and its predecessors in title have used this mark continuously since April 15, 1961. The plaintiff seeks to enjoin the defendant, Don Kelly Building Company (Don Kelly) from using the name "Tantallon Square". Don Kelly claims that the name "Tantallon" has a general geographic meaning and as such is not susceptible to registration as a service mark; this same defense of geographic meaning is asserted to the unfair competition claim.

A hearing for a preliminary injunction was held, but upon presentation of meager testimony the court declined to grant the injunction because of the paucity of the evidence and the lack of harm or threat of harm to the plaintiff. Prior to trial counsel for the parties agreed on a stipulation of facts which constituted the total factual record at trial.

According to the stipulation, Tantallon is an exclusive, planned community developed by the plaintiff out of raw acreage in Prince George's County, Maryland. The community is located on Fort Washington Road with substantial water frontage on Swan Creek, a tributary of the Potomac River. Prestwick's primary business is selling building lots created out of its undeveloped land, but it has occasionally built and sold houses on its land. Prestwick also maintains a country club, golf course, and a marina for the planned community.

Purchasers of lots in Tantallon select their own builder; however, prior to construction, all plans for homes to be built in Tantallon must be submitted to plaintiff for review and approval. In conjunction with this review, it should be noted that all lots sold in Tantallon are subject to extensive deed covenants. The custom-built homes provide a variety and balance of architectural design and incorporate, as much as possible, natural surroundings, such as trees, into the homesite. In sum, Tantallon does not seek and does not have the image of a mass-developed suburb. Plaintiff serves its purchasers by preparing each lot for the construction of the home including such tasks as dedicating roads, providing utilities, and grading and clearing. In addition, plaintiff represents that it offers purchasers continuing services in maintaining Tantallon community including the country club, golf course, and marina, and other facilities available.

At present, lot prices in Tantallon range from $15,000 to $58,000. Prestwick's officers testified that in their opinion the minimum cost of a home built in Tantallon would be $85,000.

It is stipulated that prior to April 15, 1961, the raw acreage now developed as Tantallon had no significant geographical name. Plaintiff's predecessors adopted the name Tantallon in April of 1961, and the name has been in continuous use by them since that time.

According to the stipulation, Tantallon is the name of a castle in Scotland which is adjacent to a famous golf course; however, prior to its use by Prestwick it had no geographic significance and no known identification with any other development or planned community in the United States.

1. 15 U.S.C. § 1053 provides that marks which identify services may be registered as well as trademarks which identify tangibles.

The significance of the name in the immediate locale is limited. The Oxon Hill, Maryland, Post Office serves the Tantallon community, but mail addressed to Tantallon would probably be received. A James Douglas owns a farm in Potomac (Montgomery County), Maryland, which apparently has been known as Tantallon since 1947. Both plaintiff and defendant agree that, as far as is known, Douglas has not promoted or sold any products under this name. It is stipulated that the plaintiff has spent nearly one million dollars in promotion expenditures, including $567,000 for newspaper and other media advertising.

It is agreed that some time in 1966 the predecessors in title to Don Kelly recorded in the Land Records of Prince George's County, Plat Book WW 60, Folio 65, a plat of land on the east side of Fort Washington Road slightly north of Tantallon. The plat refers to the land as Section 1, Tantallon Square. While it is not known who named the plat, Tantallon Square, the name may have been chosen by the county engineers who prepared the plat. This plat was recorded without the knowledge or consent of the plaintiff.

This suit had its genesis in January of 1968, when Don Kelly placed signs on Fort Washington Road and elsewhere advertising residential property for sale with improvements known as Tantallon Square.[2] This subdivision is presently under construction and consists of standardized models of homes of a moderate price for the Washington area. Unlike plaintiff the defendant is primarily in the business of selling these properties improved with houses built by it to prospective purchasers Don Kelly's officers testified at the preliminary hearing (and it is stipulated that they would have so testified at trial) that the name Tantallon Square was used because that name appeared on the plat of the subdivision as recorded among the Land Records of Prince George's County. According to the officers they were accustomed to naming their subdivisions after geographical or land plat references. They also testified that they could have chosen another name.

While the defendant's subdivision was still in its embryonic stages, Prestwick filed an application for registration of the service mark Tantallon in the United States Patent Office. Notice was duly published as required by the Trademark Law of 1946 and no notice of opposition was filed to the application. On August 28, 1968, Prestwick, having proved to the Patent Office that it owned and used the mark continuously for at least five (5) years, Certificate of Registration No. 855,715 was issued to it for the service mark Tantallon.

In conjunction with its trademark proceedings, Prestwick sent several letters of warning to the defendant. The first of these was on January 30, 1968, twenty (20) days after the application had been filed. However, Don Kelly apparently ignored the letter and began advertising Tantallon Square in April of 1968. Another letter of warning was sent on August 30, 1968, after the Certificate of Registration was issued, but defendant continued to advertise in the Washington-area papers and continues to maintain road signs on Fort Washington Road and elsewhere which advertise "Tantallon Square". While not truly proper matter for a stipulation of fact, the parties have stipulated that "there is some likelihood of confusion between the use of the name Tantallon and the name Tantallon Square by the Defendant."

These are the facts which have been adduced by stipulation of the parties. From them and the exhibits, as well as the argument of counsel, the court has concluded that the defendant has not rebutted the prima facie proof of the validity of the service mark which

2. Don Kelly and Tantallon Square are not the only adjoining subdivisions to use the plaintiff's name Tantallon, but it is the understanding of this court that its decision in this matter may be dispositive of the other suits.

attaches to its registration with the Patent Office, 15 U.S.C. § 1115(a). While it is true that a word which connotes a general geographic term is generally not capable of being registered as a trade- or service mark, 15 U.S.C. § 1052(e), the defendant has failed to prove such a general geographic meaning. It is stipulated that the raw acreage itself, prior to the plaintiff's development, had no general geographic name and, indeed, it is further stipulated that in the United States the name Tantallon has no generally known geographic significance. Nor is the name Tantallon identified with any other planned community in the United States. The fact that a farmer in Montgomery County has used the name in a non-business context surely does not establish a general geographic meaning. There is insufficient evidence to conclude that the general area around the plaintiff's development is coming to be known as Tantallon. The fact that a letter misaddressed to Tantallon might be delivered is not evidence of geographic meaning but evidence of the general public recognition of the plaintiff's services. Surely Prestwick's success, nurtured by its promotional activities in the area, in becoming recognized by the general public does not deprive it of its service mark. Rather, it is evidence that even assuming the name Tantallon has a general geographic significance somewhere, plaintiff's use of the name has created a secondary meaning.

▉ If a term has a general geographic meaning it may, nonetheless, be registered if it has acquired a secondary meaning. As explained by Vandenburg, Trade-Mark Law and Procedure (1959), p. 85:

If the subject matter, even though geographically descriptive, has more trademark significance with respect to the goods [or services] it is not primarily geographically descriptive and it is registerable.

Speaking in the context of an unfair-competition action brought to enjoin use of a similar name which had geographic significance, the Court of Appeals of Maryland, in Baltimore Bedding Corp. v. Moses, stated:

There is nothing abstruse or complicated about this theory ["secondary meaning"], however difficult its application may sometimes be. It contemplates that a word or phrase originally, and in that sense primarily, incapable of exclusive appropriation with reference to an article on the market, because geographically or otherwise descriptive, might nevertheless have been used so long and so exclusively by one producer with reference to his article that, in that trade and to that branch of the purchasing public, the word or phrase had come to mean that the article was his product; in other words, had come to be, to them, his trade-mark. So it was said that the word had come to have a secondary meaning * * *. 182 Md. 229, 238, 34 A.2d 338, 343 (1944); see also Edmondson Village Theater v. Einbinder, 208 Md. 38, 116 A.2d 377 (1955).

Using this test, it is clear that any geographical significance which the term Tantallon may have acquired is minor to the association that name has gained in the public's mind with the plaintiff's operation.

▉ In recent years service marks have been issued to such products and services as Disneyland, Leisure World, and Marineland, but the court is aware of no cases construing the validity of these marks. However, it seems plain from the purposes of the general law of unfair competition and from the Lanham Trademark Act that where an entrepreneur has successfully marketed a product, services, or combination of both, other business enterprises should not be permitted to usurp his good name and reputation or to confuse the public into misassociating the two. The use of the term Tantallon Square by Defendant, Don Kelly, to describe his development is an infringement of the plaintiff's valid service mark and constitutes unfair competition for it attempts to usurp the good name and reputation of the plaintiff's service mark Tantallon

and, therefore, will be enjoined. It cannot be denied that the plaintiff has a legitimate right to the exclusive use of the name and that his services and the name by which he has chosen to connote them are entitled to be free from confusion with other products and services. However, since Prestwick has not shown any loss of profit or other monetary damage from the illegitimate use of its service mark, the court does not award damages to the plaintiff.

Counsel will submit an appropriate injunction order for the consideration of the court.