TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00384-CV






Horseshoe Bay Resort Sales Co., Appellant



v.



Lake Lyndon B. Johnson Improvement Corporation, Appellee







FROM THE DISTRICT COURT OF LLANO COUNTY, 33RD JUDICIAL DISTRICT


NO. 11,946, HONORABLE GUILFORD L. JONES, III, JUDGE PRESIDING







 This is a dispute over an internet domain address and alleged trademark infringement
and dilution. The parties to this suit provide real estate services in Llano County, Texas. Since
1971, appellee Lake Lyndon B. Johnson Improvement Corporation ("Lake LBJ Corp.") has done
business as "Horseshoe Bay." In 1996, appellant Horseshoe Bay Resort Sales Company ("Resort
Sales Co.") registered the domain name "horseshoebay.com" and began using this Internet address
for its website. Lake LBJ Corp. consequently brought suit for common law infringement and
dilution under the Texas Anti-Dilution Statute. See Tex. Bus. & Com. Code Ann. § 16.29 (West
Supp. 2001). The district court issued a declaratory judgment that "Horseshoe Bay" is a valid
trademark belonging to Lake LBJ Corp. and that Resort Sales Co.'s use of the mark constitutes
dilution. The court also granted a permanent injunction, assigning the domain name
"horseshoebay.com" to Lake LBJ Corp., and awarded Lake LBJ Corp. attorney's fees. Resort Sales
Co. challenges the district court's findings (1) that "Horseshoe Bay" is a protectable mark, (2) that
Resort Sales Co.'s use of the domain name dilutes the mark, (3) that the claims are not barred by the
statute of limitations, (4) that declaratory relief was appropriate, and (5) that Lake LBJ Corp. is
entitled to attorney's fees. We will affirm the district court's judgment.


BACKGROUNDParties

 Lake LBJ Corp. is a Texas corporation based in Llano County. The corporation was
chartered in 1970 to develop residential real estate and a golf resort along the shores of Lake Lyndon
B. Johnson. In 1971, Lake LBJ Corp. filed the appropriate forms in Burnet and Llano Counties,
registering its intent to do business as "Horseshoe Bay" and has maintained this registration to date. 
Also in 1971, Lake LBJ Corp. began using the mark "Horseshoe Bay" with a sailboat logo and a
specially designed typeface to designate both its real estate development services and the resort.

 There was no established community by the name "Horseshoe Bay" at this location
before that developed by Lake LBJ Corp. The area was previously known as the Lupton Ranch. 
Lake LBJ Corp.'s founders came to the name "Horseshoe Bay" as the result of a confluence of
factors: the shoreline for the proposed development is in the rough shape of a horseshoe; Horseshoe
Creek runs through the property; and Lake LBJ Corp.'s founders discovered a horseshoe on the
beach while discussing a list of potential names, including Horseshoe Bay. The Marble Falls post
office provided postal service to the area until the mid-1980s, when the Horseshoe Bay community
received its own post office. 

 In 1986, Lake LBJ Corp. registered its "Horseshoe Bay" logo and typestyle with the
United States Patent and Trademark Office as a service mark for commercial real estate brokerage
and property management services. This registration specifically disclaimed any exclusive right in
the name "Horseshoe Bay," apart from the mark registered, because the trademark examiner found
the name to be geographically descriptive. The examiner based this decision on a preliminary
review, which revealed that the application's postmark read "Horseshoe Bay." Lake LBJ Corp. did
not challenge this finding and thus the examiner undertook no further investigation.

 In 1987, Lake LBJ Corp. and the golf resort became separate entities. Under the
severance agreement, both are permitted to use the "Horseshoe Bay" logo. Lake LBJ Corp.'s
brochures and other advertisements continue to use the name "Horseshoe Bay" to designate both the
company and the services it offers to the present day. The district court also determined that all other
known Texas users of the words "Horseshoe Bay" add a business identifier to separate their identity
from Lake LBJ Corp.

 Resort Sales Co. was founded in 1988 as a real estate brokerage firm in Llano County. 
Resort Sales Co. is not a real estate development corporation, but to the extent that it sells real estate
in Llano County, it directly competes with Lake LBJ Corp. The district court found that Resort Sales
Co. has never done business solely as "Horseshoe Bay" and that Resort Sales Co. was aware that
Lake LBJ Corp. did business under that name. In 1996, Resort Sales Co. registered and began using
the Internet domain name "horseshoebay.com" for its website. (1) 


District Court Proceedings

 In 1999, Lake LBJ Corp. brought suit against Resort Sales Co. for common law
infringement and statutory dilution based on Resort Sales Co.'s registration and use of the
"horseshoebay.com" domain name. In seventy findings of fact and fifteen conclusions of law, the
district court found that "Horseshoe Bay" is a valid mark (2) owned by Lake LBJ Corp. and that Resort
Sales Co.'s registration of the domain name constitutes both infringement and dilution. The court
ordered Resort Sales Co. to transfer ownership of the domain name to Lake LBJ Corp. and enjoined
Resort Sales Co. from registering or attempting to register any domain name containing the words
"horseshoe" or "bay," except a domain name that consists solely of Resort Sales Co.'s full name. 
The court also awarded Lake LBJ Corp. $23,465 in attorney's fees. The district court rendered a
judgment granting this relief on March 15, 2000. On June 27, 2000, the district court modified its
judgment, awarding an additional $15,000 in attorney's fees to Lake LBJ Corp.


DISCUSSION

Standard of Review

 The distinctiveness of a mark, whether that mark has acquired secondary meaning,
and the existence of likelihood of confusion are all questions of fact. Pebble Beach Co. v. Tour 18
I, Ltd., 155 F.3d 526, 537 (5th Cir. 1998). We attach to the court's findings of fact the same weight
that we attach to a jury's verdict upon jury questions. Lawyers Sur. Corp. v. Larson, 869 S.W.2d
649, 653 (Tex. App.--Austin 1994, writ denied). When reviewing a finding for factual sufficiency,
we must consider and weigh all the evidence and should set aside the judgment only if the evidence
supporting the finding is so weak or the finding is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). We will not substitute our judgment for that of the trier
of fact merely because we reach a different conclusion. Westech Eng'g, Inc. v. Clearwater
Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ). 


Infringement Claim

 To establish a claim for infringement of a common law mark, the plaintiff must
demonstrate: (1) the name it seeks to protect is eligible for protection; (2) it is the senior user of the
name; (3) there is a likelihood of confusion between its mark and that of the other user; and (4)
because it seeks the equitable remedy of injunction, it must show that the likelihood of confusion
will cause irreparable injury for which there is no adequate legal remedy. Zapata Corp. v. Zapata
Trading Int'l, Inc., 841 S.W.2d 45, 47 (Tex. App.--Houston [14th Dist.] 1992, no writ). (3) By its first
issue, Resort Sales Co. challenges the first prong, arguing that "Horseshoe Bay" is not eligible for
protection because it is a geographically descriptive term that has not acquired secondary meaning.

I. Protectability of Marks

 Trade and service marks are defined as words, names, or symbols that enable
consumers both to distinguish goods or services and to identify their source. See Pebble Beach, 155
F.3d at 536. Marks are therefore eligible for protection only if they can identify and distinguish the
plaintiff's goods or services from those of others. See Pebble Beach Co. v. Tour 18 I, Ltd., 942 F.
Supp. 1513, 1536 (S.D. Tex. 1996), aff'd as modified, 155 F.3d 526 (5th Cir. 1998). 

 To determine the distinguishing capability of a mark, and thus its eligibility for
protection, courts employ the classic trademark continuum articulated in Abercrombie & Fitch Co.
v. Hunting World, Inc., 537 F.2d 4, 9 (2nd Cir. 1976). Pebble Beach, 942 F. Supp. at 1537. A mark
may be (1) fanciful, (2) arbitrary, (3) suggestive, (4) descriptive, or (5) generic. Id. Fanciful,
arbitrary, and suggestive marks are inherently distinctive and therefore protectable without an
additional showing of consumer identification. (4) Id. At the other end of the continuum are generic
marks, which are never protectable because they represent the name of the good or service itself and
therefore cannot identify or distinguish a particular source. Id. Descriptive marks fall somewhere
in between. These marks describe a characteristic of the good or service itself and may not be
protected absent a showing that the mark has become associated in the minds of consumers with the
particular, albeit unknown, source. Pebble Beach, 155 F.3d at 540. This association is called
secondary meaning. Id.

 When coined by Lake LBJ Corp.'s founders in 1971, the name "Horseshoe Bay" for
real estate development services was arbitrary. Whether the mark continues to be arbitrary, however, 
is potentially complicated by the fact that the mark is used not only to name Lake LBJ Corp.'s
services but also to name a residential development. Thus, the significance of the mark has taken
on a geographic aspect. 

 Generally, geographically descriptive marks constitute a subset of descriptive marks. 
Because the primary significance to consumers of a geographic term is the place itself, a
geographically descriptive mark cannot serve to identify or distinguish the particular source of a
good or service. See Pebble Beach, 942 F. Supp. at 1538. The Second Circuit, for example, held
that the mark "Washington Speakers Bureau" was geographically descriptive because "[t]he term
'Washington' . . . functions in part to identify the general location of the business and thus is
descriptive of the geographic source of the services provided by WSB." Washington Speakers
Bureau, Inc. v. Leading Auths., Inc., 33 F. Supp. 2d 488, 495-96 (E.D. Va. 1999) (footnote omitted). 
Geographically descriptive marks can only be protected if they have acquired secondary meaning:
in other words, the use of the mark is such that consumers have come to associate the marked goods
or services with a particular source, not a particular place. Id. The Washington Speakers Bureau
court found that the mark in that case had acquired secondary meaning because "its primary
significance to the consuming public is not the descriptive information it imparts, but the mark's
association" with the plaintiff's services. Id. at 496.

 Resort Sales Co. argues that the mark "Horseshoe Bay" cannot be protected because
the success of the residential development has made the mark geographically descriptive. Resort
Sales Co. claims that "Horseshoe Bay" describes a specific physical location in Llano County and
consequently cannot identify or distinguish Lake LBJ Corp.'s real estate development services.

 In one of only a handful of cases to address the issue of geographic descriptiveness
and real estate developments, a federal district court sitting in Texas rejected an argument analogous
to that made by Resort Sales Co. See Pebble Beach, 942 F. Supp. at 1538. In Pebble Beach, the
court distinguished situations in which the plaintiff coins and creates an arbitrary name for a
geographic locale from situations in which businesses use the name of an already existing geographic
locale in their mark. Id. The former are entitled to protection absent a showing of secondary
meaning; the latter are not. Id. On facts remarkably similar to those before us, the Pebble Beach
court concluded that the name of an incorporated real estate development and golf resort,
"Pinehurst," was protectable, despite the obvious geographic aspects of the development, because
the mark was arbitrary and not geographically descriptive when coined by the plaintiffs. Id.

 Like the court in Pebble Beach, the district court below held that "Horseshoe Bay"
was an arbitrary name coined by Lake LBJ Corp. specifically for their real estate development. The
court found that the area was not previously known under that name; the development site itself had
been called Lupton Ranch. The district court found that Lake LBJ Corp.'s choice of the name, from
a list of ten, depended on the fortuity of finding a horseshoe on the beach while discussing potential
names. Finally, the record reveals that the Marble Falls post office served the area from the time
development began through the mid-1980s. Because the mark "Horseshoe Bay" is an arbitrary mark,
coined by Lake LBJ Corp., and was not in prior use at the geographic site, we conclude that the
district court did not err in resolving that the mark "Horseshoe Bay" is not geographically
descriptive. 

 Resort Sales Co. next argues that even if the mark was protectable when coined, the
success of the development and resort have caused the mark to take on primary geographic
significance in the same way a mark becomes generic and thus unprotectable. "Genericide" occurs
when a formerly protected mark, like "aspirin," loses its protection status because it has become the
common name of the product itself and not a word that identifies and distinguishes a particular
product made by a specific producer. America Online, Inc. v. AT&T Corp., 243 F.3d 812, 821 (4th
Cir. 2001).

 Case law refutes the contention that marks can, over time, become geographically
descriptive because of the success of the mark in creating a recognizable geographic locale. The
Pebble Beach court held that the mark "Pinehurst" was not geographically descriptive because "if
there is any geographic connotation to PINEHURST, such meaning has developed over time since
the creation of the Pinehurst resort and is directly attributable to the growth and success of the
mark." Pebble Beach, 942 F. Supp. at 1537 (emphasis added). The court effectively rejected the
idea that residential community developers could be the victims of their own success, forced to trade
protection of their mark for success in the market. In so concluding, the Pebble Beach court relied,
in part, on two additional cases also apposite to the case at issue.

 In Prestwick, Inc. v. Don Kelly Building Co., 302 F. Supp. 1121, 1124 (D. Md. 1969),
the mark "Tantallon" used by a successful real estate development was held protectable ten years
after it was coined, despite its success as a geographically identifiable locale. Because "Tantallon"
had "no generally known geographic significance" before its use by the plaintiff and was an
inherently distinctive mark when coined, it did not forfeit protection simply because it had become
known as the name of a geographic site. Id. Similarly, the Patent and Trademark Board of Appeals
found that the mark "17 Mile Drive" was not geographically descriptive, despite its description of
a well-known geographic spot. In re Pebble Beach Co., 19 U.S.P.Q.2d 1687, 1688-89 (T.T.A.B.
1991). The renown of the area did not make the mark primarily geographically descriptive, but,
"[o]n the contrary the fame of the geographic area establishes that '17 MILE DRIVE' functions as
a mark, because it is through applicant's efforts . . . that the name given by applicant to part of its
land has come to be recognized as indicating a specific physical location." Id. We find the
reasoning in these cases persuasive.

 For almost three decades, Lake LBJ Corp. has been doing business as "Horseshoe
Bay" and has been using the mark on brochures and advertising material and in other business
contexts. All other users of "Horseshoe Bay" add a business identifier to distinguish themselves
from Lake LBJ Corp. Furthermore, Lake LBJ Corp. has spent on average over $200,000 per year
advertising under the name, in addition to the many millions of dollars spent developing the
residential community itself. Any geographic significance of the mark is due directly to the efforts
of Lake LBJ Corp. and its former partners to build and promote a residential community and golf
resort in the area.

 The mark "Horseshoe Bay" was arbitrary when coined, and the geographic
connotation of the mark is directly attributable to the growth and success of the residential
community and resort. We therefore hold that the district court did not err in concluding that the
mark "Horseshoe Bay" is protectable for the purposes of establishing an infringement claim. (5) 


II. Likelihood of Confusion

 In addition to finding the mark protectable, the district court found that Lake LBJ
Corp. had established a likelihood of confusion from Resort Sales Co.'s use of the contested domain
name. Resort Sales Co. challenges this finding because the court found only five to ten demonstrated
instances in which consumers trying to locate Lake LBJ Corp. inadvertently sent their e-mail to
Resort Sales Co. through "horseshoebay.com."

 In determining the existence of a likelihood of confusion, a court may consider a
number of factors including: (1) the type or strength of the mark; (2) the degree of similarity between
the plaintiff's and defendant's mark; (3) the similarity between plaintiff's and defendant's goods or
services; (4) the identity of plaintiff's and defendant's customers; (5) the similarity of plaintiff's and
defendant's advertising; (6) the defendant's intent; and (7) the existence of actual confusion. Pebble
Beach, 155 F.3d at 543. This list is not exhaustive, and it is not necessary for the plaintiff to show
that all of the factors are present. Id.


 A. Strength of the mark

 Strong marks are widely protected because they possess the inherent ability to identify
and distinguish services and sources and therefore represent the marks whose use by another is most
likely to mislead or confuse consumers. Pebble Beach, 942 F. Supp. at 1542. The strength of a mark
is determined by its placement on the continuum of distinctiveness. Id. Fanciful, arbitrary, and
suggestive marks are among the stronger marks on the continuum and thus are entitled to the
broadest scope of protection. Id. at 1543. As discussed above, the record supports the district
court's conclusion in finding the mark "Horseshoe Bay" to be arbitrary. In addition, the district court
found that even if the mark was descriptive, it had acquired secondary meaning. Marks that have
acquired secondary meaning are also considered strong marks. Id. The strength of the mark
"Horseshoe Bay" supports the district court's finding that Resort Sales Co.'s use of it causes a
likelihood of confusion.


 B. Similarity of Marks, Services, and Advertising

 The marks being compared in this case are "Horseshoe Bay" for real estate services
and the domain name "horseshoebay.com," used by a company also offering real estate services. The
only distinction between the marks is the addition of the letters ".com," which is obviously of de
minimus importance when comparing a service mark to a potentially infringing domain name. 
Brookfield Communications v. West Coast Entm't, 174 F.3d 1036, 1055 (9th Cir. 1999). A
trademark plus ".com" is, "for all intents and purposes, identical in terms of sight, sound, and
meaning" to the trademark alone. Id. For the purposes of this case, therefore, the mark and the
domain name are identical, supporting the district court's finding of likelihood of confusion.

 To determine similarity of advertising, the marks must also be considered "in light
of the way the marks are encountered in the marketplace and the circumstances surrounding the
purchase" of Lake LBJ Corp. and Resort Sales Co.'s services. See Pebble Beach, 942 F. Supp. at
1544 (quoting Lindy Pen Co. v. Bic Pen Corp., 725 F.2d 1240, 1245 (9th Cir. 1984)). Both parties
use the Internet to market and advertise their services and to communicate directly, through e-mail,
with customers. Courts have consistently recognized that use of the Internet exacerbates the
likelihood of confusion. Brookfield Communications, 174 F.3d. at 1057. For example, a consumer
interested in purchasing real estate from Lake LBJ Corp. might go to the Internet and type in
"horseshoebay.com," hoping that the trade name under which the consumer knows the company will
be its website name. Once at the site, the consumer might think that she has reached Lake LBJ
Corp., or a business sponsored by or affiliated with Lake LBJ Corp., and begin the process of
purchase through Resort Sales Co. Id. In this way, as the district court found, Resort Sales Co.
could capture a Lake LBJ Corp. customer precisely because it registered a domain name it knew was
associated with its competitor's business. Consumers might also type in the internet address
intending to reach Lake LBJ Corp. and quickly realize, if the site has a disclaimer for example, that
they are at Resort Sales Co.'s site. But because Resort Sales Co. provides similar services to Lake
LBJ Corp., consumers may stay. Id. In this scenario, Resort Sales Co. has used the reputation and
goodwill of Lake LBJ Corp. to attract the customer and as a result has then captured Lake LBJ
Corp.'s customers. Because of these and other kinds of confusion, federal courts have been active
in protecting mark holders from those who would register domain names employing those marks. 
See, e.g., id.; Playboy Enter. v. Netscape Communications Corp., 55 F. Supp. 2d 1070, 1074 (C.D.
Cal. 1999). We view this as a sound response and see no reason for state courts to do otherwise. 


 C. Defendant's Intent in Copying

 The district court also found that Resort Sales Co. registered the domain name
specifically in order to benefit from Lake LBJ Corp.'s reputation and goodwill and, in fact, to capture
Lake LBJ Corp.'s customers seeking services through the Internet. Such evidence weighs strongly
in favor of likelihood of confusion. As the Fifth Circuit has noted, "where a plaintiff can show that
a defendant used its mark with the intent of deriving benefit from the reputation or good will of the
plaintiff, that fact alone may be sufficient to justify a finding of confusion." Pebble Beach, 942 F.
Supp. at 1546. 

 The district court below found that Resort Sales Co. never used the trade name
"Horseshoe Bay" as an identifier for its business or services and that Resort Sales Co. was aware that
Lake LBJ Corp. did use "Horseshoe Bay" as a trade name. The record also contains evidence that
Resort Sales Co. additionally registered the domain name "horseshoebay.cc" and noted in internal
correspondence, "I don't know for sure that the .cc will really take off, but at least you know who
doesn't have it." The district court found that "you know who" referred to Lake LBJ Corp. Finally,
after being ordered to put a disclaimer on the website by the district court before the completion of
the trial, Resort Sales Co. lightened and reduced the size of the disclaimer without the court's
permission. The district court concluded that these facts reflect strong evidence of Resort Sales
Co.'s intent to derive benefit from Lake LBJ Corp.'s goodwill and reputation by registering the
domain name, and therefore present strong evidence of likelihood of confusion. We agree.

 D. Actual Confusion

 Finally, the district court found evidence of actual consumer confusion among visitors
to the Resort Sales Co. website. Five to ten e-mails sent through the "horseshoebay.com" website
were from customers trying to reach Lake LBJ Corp. Evidence of actual confusion is the "best
evidence" of a likelihood of confusion. Pebble Beach, 942 F. Supp. at 1548. Furthermore, "while
very little proof of actual confusion would be necessary to prove likelihood of confusion, an almost
overwhelming amount of proof would be necessary to refute such proof." Id. (quoting Fuji Photo
Film v. Shinohara Shoji Kabushiki Kaisha, 754 F.2d 591, 597 (5th Cir. 1985)).

 The evidence of actual confusion, when combined with potential confusion based on
the strength of Lake LBJ Corp.'s mark, the similarity of the marks, the similarity of the services, and
the defendant's intent in copying, all justify the district court's finding that Lake LBJ Corp.
established sufficient likelihood of confusion to support their infringement and unfair competition
claim.

 In conclusion, we hold that the district court did not err in finding that "Horseshoe
Bay" is a protectable mark and finding that Resort Sales Co.'s use of the mark created a likelihood
of confusion. We therefore affirm the district court's conclusion that Resort Sales Co. infringed
Lake LBJ Corp.'s valid common law mark by registering and using the domain name
"horseshoebay.com."


Dilution

 By its second issue, Resort Sales Co. challenges the district court's finding that its
registration and use of the domain name "horseshoebay.com" diluted Lake LBJ Corp.'s mark under
the Texas Anti-Dilution Statute. See Tex. Bus. & Com. Code Ann. § 16.29. To maintain a dilution
claim, the plaintiff must establish (1) ownership of a distinctive mark, and (2) a likelihood of
dilution. (6) Pebble Beach, 942 F. Supp. at 1564. We have dispensed with Resort Sales Co.'s
challenge to the first criteria by our discussion. Resort Sales Co. also challenges the district court's
finding that its registration of "horseshoebay.com" is likely to dilute Lake LBJ Corp.'s mark.

 Dilution involves the gradual "whittling away" of a party's distinctive mark through
unauthorized use by another. Id. Even in the absence of consumer confusion, an unauthorized user's
adoption of another's mark lessens that mark's capacity to identify the true owner's goods and
services. Id. at 1567. The Pebble Beach court noted that if the plaintiff holds a distinctive mark, "it
is enough [for dilution] that the defendant has made significant use of a very similar mark." Id. 
Furthermore, federal courts evaluating dilution claims arising from the unauthorized registration of
another's mark as a domain name have resoundingly concluded that this activity constitutes dilution
because it inherently lessens the capacity of the trademark owner to identify and distinguish its goods
and services on the Internet. E. & J. Gallo Winery v. Spider Webs, Ltd., 129 F. Supp. 2d 1033, 1038-39 (S.D. Tex. 2001); Intermatic v. Toeppen, 947 F. Supp. 1227, 1240 (N.D. Ill. 1996). When a party
registers another's trademark as a domain name, the trademark owner is effectively enjoined from
using its own trademark to identify its own goods and services on the Internet. This de facto
injunction whittles away at the trademark's ability to distinguish the true owner's goods and services
and therefore constitutes dilution. Intermatic, 947 F. Supp. at 1240. 

 Resort Sales Co. registered a domain name using words identical to Lake LBJ Corp.'s
distinctive mark. By this action, Resort Sales Co. prevented Lake LBJ Corp. from using its own
mark to identify itself and its services on the Internet. The district court found that this use of Lake
LBJ Corp.'s mark lessens its capacity to identify and distinguish Lake LBJ Corp. and its services
from all others and therefore creates a likelihood of dilution. We hold that the district court did not
err in concluding that Lake LBJ Corp. established a likelihood of dilution. 

 We hold that the district court did not err in concluding that Resort Sales Co.
infringed upon and diluted Lake LBJ Corp.'s common law mark "Horseshoe Bay" by registering and
using the domain name "horseshoebay.com" for its website. We thus overrule Resort Sales Co.'s
first and second issues.


Statute of Limitations

 Resort Sales Co. registered and began using the domain name "horseshoebay.com"
for its website in June 1996. Lake LBJ Corp. did not file suit until January 1999. By its third issue,
Resort Sales Co. claims that both the infringement and dilution claims are time barred because the
suit was filed beyond the two year statute of limitations for tort actions.

 Generally, a cause of action accrues when a wrongful act causes some legal injury.
Murray v. San Jacinto Agency, Inc., S.W.2d 826, 828 (Tex. 1990); First Gen. Realty Corp. v.
Maryland Cas. Co., 981 S.W.2d 495, 501 (Tex. App.--Austin 1998, pet. denied). The statute of
limitations begins to run from the moment of accrual. Id. An exception to this rule exists for
continuing torts. First Gen. Realty Corp., 981 S.W.2d at 501. A continuing tort involves wrongful
conduct that is repeated over a period of time and each day creates a separate cause of action. Id. 
Each subsequent violation is a separate event, separately actionable, which begins anew the running
of the statute of limitations. Derrick Mfg. Corp. v. Southwestern Wire Cloth, 934 F. Supp. 796, 808
(S.D. Tex. 1996). Trademark infringement is a continuing tort in Texas. Id. at 808; Two Pesos, Inc.
v. Gulf Ins. Co., 901 S.W.2d 495, 500-01 (Tex. App.--Houston [14th Dist.] 1995, no writ);
Thompson v. Thompson Air Conditioning & Heating, Inc., 884 S.W.2d 555 (Tex. App.--Texarkana
1994, no writ). (7)

 In this case, Lake LBJ Corp. is seeking injunctive relief for just such a continuing
harm. Each day that Resort Sales Co. infringes on Lake LBJ Corp.'s mark by holding and using the
domain name "horseshoebay.com," Resort Sales Co. harms Lake LBJ Corp.'s business. This
continuing harm gives rise to a separate cause of action each day it is repeated. Because Resort Sales
Co. used the domain name from 1996 through the institution of this suit, the district court did not
err by failing to find that the limitations period barred Lake LBJ Corp.'s infringement claim. 

 Resort Sales Co.'s wrongful use of the domain name constitutes the basis for both the
infringement and the dilution action. We see no error, therefore, in the district court's failing to find
that limitations barred the dilution claim, and we overrule Resort Sales Co.'s third issue.



Attorney's Fees


 By its fourth and fifth issues, Resort Sales Co. challenges the district court's grant of
attorney's fees to Lake LBJ Corp. We find these to be without merit.


I. Appropriateness of Declaratory Judgment


 Resort Sales Co. argues that the declaratory judgment upon which the grant of
attorney's fees was based did not resolve any live controversy between the parties and was a pretext
for the award. Resort Sales Co. claims that because infringement and dilution are tort claims,
litigation of liability under the Declaratory Judgment Act is improper. When addressing this exact
question, however, a sister court of appeals rejected the argument, recognizing "declaratory judgment
litigation to be an appropriate vehicle for determining infringement or noninfringement" of a mark. 
First Gibraltar Mortgage Corp. v. Gibraltar Sav. Ass'n, 658 S.W.2d 709, 711 (Tex. App.--Dallas
1983, writ dism'd w.o.j.). We find First Gibraltar persuasive and accordingly conclude that the
district court did not abuse its discretion in issuing a declaratory judgment in Lake LBJ Corp.'s
favor.


II. Timing of Expert Designation

 Resort Sales Co. next argues that Lake LBJ Corp. did not prove either "good cause"
or "no unfair prejudice" in defense of its failure to designate an expert on attorney's fees within the
statutory time limit. Because Resort Sales Co. waived any objection to the expert, we need not
address this contention. See Tex. R. App. P. 33.1(a).

 On November 1, 1999, Lake LBJ Corp. designated an expert on attorney's fees. Lake
LBJ Corp. does not contest that under Texas Rules of Civil Procedure 190.3(b)(1)(B)(i), enacted
shortly before this case was filed, the designation was late. See Tex. R. Civ. P. 190.3(b)(1)(B)(i). 
Resort Sales Co., however, failed to object to admission of the expert's testimony until he had
testified to everything asked of him except his figure for appellate fees and his conclusion that the
fees were reasonable. Resort Sales Co. also failed to object earlier in the day when informed in a
discussion on the record that the expert had been delayed but would be available to testify in the
afternoon. The district court thus found that Resort Sales Co. had waived its objection concerning
the timing of the expert's designation.

 "Evidentiary rulings are 'committed to the trial court's sound discretion.'" Owens-Corning Fiberglas Corp. v. Wasiak, 972 S.W.2d 35, 43 (Tex. 1998) (quoting City of Brownsville v.
Alvarado, 897 S.W.2d 750, 753 (Tex. 1995)). Because the Texas Supreme Court has noted that "by
failing to object when an undisclosed witness is offered at trial, a party waives any complaint under
Rule 215(5) as to the admission of testimony from that witness," Clark v. Trailways, Inc., 774
S.W.2d 644, 647 (Tex. 1989) (emphasis added), we hold that the district court did not abuse its
discretion in overruling Resort Sales Co.'s objection.

 Furthermore, Resort Sales Co. failed to object to the admission of a detailed time and
billing record compiled by Lake LBJ Corp.'s attorneys that provided ample basis to support the
district court's findings regarding the fees. Resort Sales Co. challenged neither the accuracy nor the
reasonableness of the fees quoted in the exhibit. Thus, to the extent any error was committed in
admitting the testimony of the expert, it was harmless. See Gee v. Liberty Mut. Fire Ins. Co., 765
S.W.2d 394, 396 (Tex. 1989).


III. Timing of Award

 Finally, Resort Sales Co. claims that the district court lacked jurisdiction to award
Lake LBJ Corp. additional attorney's fees. The district court signed a final judgment in this case on
January 21, 2000. On March 15, 2000, the district court signed an amended final judgment, on
Resort Sales Co.'s motion, modifying only the injunctive relief. On April 14, 2000, Resort Sales Co.
filed timely motions for new trial, to modify the judgment, and to supercede the judgment. On May
25, 2000, the district court signed an order denying only Resort Sales Co.'s motion for a new trial. 
Resort Sales Co.'s motions to modify and to supercede the judgment were not specifically ruled on
and were therefore overruled by operation of law on May 29, 2000. See Tex. R. Civ. P. 329b(c). In
an order dated June 27, 2000, the district court signed a supplemental judgment, granting Lake LBJ
Corp. an additional $15,000 in attorney's fees to cover the costs of post-trial motions and appeal to
this court. Resort Sales Co. argues that, because the court denied its motion for a new trial on May
25, 2000, the court's plenary jurisdiction ended on June 26, 2000, one day before the court rendered
its final modified judgment.

 Under the Texas Rules of Civil Procedure, the plenary power of the trial court extends
"until thirty days after all . . . timely-filed motions are overruled, either by a written and signed order
or by operation of law, whichever occurs first." Tex. R. Civ. P. 329b(e) (emphasis added). Motions
to modify, correct, or reform a judgment extend the district court's plenary power in the same
manner as a motion for new trial. Tex. R. Civ. P. 329b(g). For the purpose of determining the
timetable for calculating jurisdiction, therefore, each of these motions is distinct and separate. White
v. Commissioners Court, 705 S.W.2d 322, 324 (Tex. App.--San Antonio 1986, no writ). Resort
Sales Co. is therefore correct that its motion for a new trial extended the court's jurisdiction for thirty
days after May 25, the date the court denied the motion. However, Resort Sales Co.'s motions to
modify and supercede the judgment, overruled by operation of law on May 29, extended the plenary
jurisdiction of the district court for an additional thirty days, until June 28. We hold, therefore, that
the district court had plenary jurisdiction to modify the final judgment on June 27, 2000, and to
award Lake LBJ Corp. an additional $15,000 in attorney's fees

 Resort Sales Co. also argues that Lake LBJ Corp.'s motion requesting the $15,000
modification was not timely because it was filed more than thirty days after the final judgment. We
do not reach this issue, however, because the trial court's March 15 judgment expressly provided for
an additional $15,000 in attorney's fees for Lake LBJ Corp. "in the event of appeal to the Court of
Appeals." Resort Sales Co. filed a notice of appeal on June 13 at a time when the district court
continued to have plenary jurisdiction over the cause. In granting the additional attorney's fees,
therefore, the district court was exercising its plenary authority over a condition subsequent expressly
contemplated in its valid final judgment. Furthermore, because the court has authority sua sponte
to modify the judgment within the duration of its plenary power, Lake LBJ Corp.'s motion was not
a necessary prerequisite to the district court's action. See id. at 325. We thus hold that the district
court did not err in granting Lake LBJ Corp. $15,000 in additional attorney's fees. We overrule
Resort Sales Co.'s final two issues. 


CONCLUSION

 We hold that the district court did not err in: (1) finding that Resort Sales Co.'s
registration of the domain name "horseshoebay.com" infringed a protectable mark owned by Lake
LBJ Corp.; (2) finding that Resort Sales Co.'s registration of the domain name also diluted the mark;
(3) not finding that Lake LBJ Corp.'s claims were barred by the statute of limitations; (4) awarding
Lake LBJ Corp.'s primary attorney's fees; and (5) modifying its award to provide Lake LBJ Corp.
additional attorney's fees. Having overruled all of Resort Sales Co.'s issues, we affirm the judgment
of the district court.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: August 9, 2001

Publish

1. Domain names function as addresses for websites on the internet: typing the domain name
into a Web browser will take the user directly to the address holder's site. Because a domain
name functions as the address for a site on the Web, it is a valuable business asset. Washington
Speakers Bureau, Inc. v. Leading Auths., Inc., 33 F. Supp. 2d 488, 499-500 (E.D. Va. 1999). 
To assist consumers in finding websites, the "domain name of a corporate website [often] will
consist of or incorporate the company's name or trademark." Id. at 491 n.4. Because the domain
name takes the user directly to a particular site, only one entity can use a given domain name to
locate its website. Appellant and appellee both use websites for marketing and communicating with
consumers. Unless they agree otherwise, only one party can own and control the site
"horseshoebay.com."
2. For the purpose of this opinion, the term "mark" includes trade names, trademarks, and service
marks. These terms are often used interchangeably and the few differences among classifications
are not relevant to our decision in this case. Union Nat'l Bank of Tex., Laredo, v. Union Nat'l Bank
of Tex., Austin, 909 F.2d 839, 841 n.2 (5th Cir. 1990).
3. A trademark infringement and unfair competition action under Texas common law presents
essentially "no difference in issues than those under federal trademark infringement actions." Zapata
Corp. v. Zapata Trading Int'l, Inc., 841 S.W.2d 45, 47 (Tex. App.--Houston [14th Dist.] 1992, no
writ).
4. Fanciful marks are words or symbols that do not exist in every day language: "Xerox" is a
classic example of a fanciful mark. Pebble Beach Co. v. Tour 18 I, Ltd., 942 F. Supp 1513, 1537
n.19 (S.D. Tex. 1996), aff'd as modified, 155 F.3d 526 (5th Cir. 1998). Arbitrary marks consist
of commonly known words or symbols, but the attachment of the word or symbol to the particular
good is arbitrary: "Blue Bell" for ice cream, for example. Id. A suggestive mark evokes some
characteristic of the good or service but is not directly descriptive: "Penguin" for refrigerators, for
example. Id.
5. Assuming for the sake of this decision that the federal standard applies in a suit on state
common law rights brought in a state court, the Patent and Trademark Office ("PTO") examiner's
determination that the mark is geographically descriptive is some evidence to be considered but
is not dispositive. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 220-21
(3rd Cir. 2000). The PTO examiner based his findings on the existence of a "Horseshoe Bay"
postmark. In light of the Pebble Beach holding and the abundant evidence the parties introduced
at trial on this question, the district court did not err in failing to follow the PTO's determination
in this case.
6. Under a plain reading of section 16.29 of the Business Code, which states that a person may
bring a dilution action "regardless of whether there is competition between the parties," it is not
relevant that Resort Sales Co. and Lake LBJ Corp. are direct competitors. Tex. Bus. & Com. Code
Ann. § 16.29 (West Supp. 2001); see also Pebble Beach, 942 F. Supp. at 1564.
7. In a copyright case, the Court of Appeals for the Fifth Circuit held that continued performance
of an infringing song created continuing damages but was not a continuing tort. Daboub v. Gibbons,
42 F.3d 285, 290-91 (5th Cir. 1995). The Fifth Circuit focused its holding on the specific policy
behind the federal copyright statute and therefore the reasoning is inapposite to this case.


"BR1">

 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: August 9, 2001

Publish

1. Domain names function as addresses for websites on the internet: typing the domain name
into a Web browser will take the user directly to the address holder's site. Because a domain
name functions as the address for a site on the Web, it is a valuable business asset. Washington
Speakers Bureau, Inc. v. Leading Auths., Inc., 33 F. Supp. 2d 488, 499-500 (E.D. Va. 1999). 
To assist consumers in finding websites, the "domain name of a corporate website [often] will
consist of or incorporate the company's name or trademark." Id. at 491 n.4. Because the domain
name takes the user directly to a particular site, only one entity can use a given domain name to
locate its website. Appellant and appellee both use websites for marketing and communicating with
consumers. Unless they agree otherwise, only one party can own and control the site
"horseshoebay.com."
2. For the purpose of this opinion, the term "mark" includes trade names, trademarks, and service
marks. These terms are often used interchangeably and the few differences among classifications
are not relevant to our decision in this case. Union Nat'l Bank of Tex., Laredo, v. Union Nat'l Bank
of Tex., Austin, 909 F.2d 839, 841 n.2 (5th Cir. 1990).
3. A trademark infringement and unfair competition action under Texas common law presents
essentially "no difference in issues than those under federal trademark infringement actions." Zapata
Corp. v. Zapata Trading Int'l, Inc., 841 S.W.2d 45, 47 (Tex. App.--Houston [14th Dist.] 1992, no
writ).
4. Fanciful marks are words or symbols that do not exist in every day language: "Xerox" is a
classic example of a fanciful mark. Pebble Beach Co. v. Tour 18 I, Ltd., 942 F. Supp 1513, 1537
n.19 (S.D. Tex. 1996), aff'd as modified, 155 F.3d 526 (5th Cir. 1998). Arbitrary marks consist
of commonly known words or symbols, but the attachment of the word or symbol to the particular
good is arbitrary: "Blue Bell" for ice cream, for example. Id. A suggestive mark evokes some
characteristic of the good or service but is not directly descriptive: "Penguin" for refrigerators, for
example. Id.
5. Assuming for the sake of this decision that the federal standard applies in a suit on state
common law rights brought in a state court, the Patent and Trademark Office ("PTO") examiner's
determination that the mark is geographically descriptive is some evidence to be considered but
is not dispositive. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 220-21
(3rd Cir. 2000). The PTO examiner based his findings on the existence of a "Horseshoe Bay"
postmark. In light of the Pebble Beach holding and the abundant evidence the parties introduced
at trial on this question, the district court did not err in failing to follow the PTO's determination
in this case.
6. Under a plain reading of section 16.29 of the Business Code, which states that a person may
bring a dilution action "regardless of whether there is competition between the parties," it is not
relevant that Resort Sales Co. and Lake