Arthur G. Klein, J.
The plaintiff in this action seeks a permanent injunction, and incidental relief, basing its complaint on the alleged simulation of plaintiff’s product “ Sominex ” by defendants’ product “Somnifac” and the alleged simulation of plaintiff’s product “Geritol” by defendants’ product “ Getrin ”.
Both parties stipulated to waive findings of fact and conclusions of law. It was also stipulated that the defendant corporations, for the purposes of this litigation, are one and the same and may be treated as one litigant.
Plaintiff’s product “Sominex”, according to the evidence, was first used in May, 1955 and up to June, 1959, the volume of sales was over $10,000,000 and advertising expenditures during that period were over $6,000,000. Defendants’ product “Somnifac” was first marketed in 1959. It seems clearly established that the defendants originated their product to compete with “ Sominex ” and, in fact, purchased the pills in question from plaintiff’s supplier. This fact, standing alone, would not subject defendants to any liability. Our free-enterprise system is based on fair and open competition between those in the same or similar lines of business. Even the obvious similarity between the names “ Sominex ” and “ Somnifac ”, if there were nothing more, would not justify intervention by a court of equity. These are generic terms, both based on the Latin “ somnus ” meaning “sleep”, and since the product was intended to be used to induce sleep, any name containing a part or all of the Latin root could not be criticized. However, defendants’ course of conduct in the manufacture and sale of their product goes far beyond the purview of “legitimate” competition.
Defendants’ pill is a two-tone blue and white tablet identical in all respects with the plaintiff’s product, except that recently *534 the plaintiff’s pill has been stamped with an “ S The shape of the bottles and the colors used on the labels are virtually the same. The make-up and material printed on the labels are quite similar and in many instances identical. It is quite clear from the evidence that the defendants have incorporated in its product practically every feature which the public would be likely to recognize in the plaintiff’s product.
As has been pointed out, plaintiff has expended many millions of dollars to advertise its product, particularly through radio and television programs, which have achieved great popularity with the public, and has thus established a substantial market for its product, as indicated by the volume of sales, in a four-year period, of over $10,000,000.
When all or a number of elements are so combined by the imitator that the casual intending purchaser is likely to be deceived and led to believe the goods are those of the plaintiff, it is within the province of equity to interfere (Pocket Books Inc. v. Meyers, 292 N. Y. 58).
The trend of the law, both statutory and decisional has been to extend the scope of the doctrine of unfair competition, whose basic principle is that commercial unfairness should be restrained whenever it appears that there has been a misappropriation, for the advantage of one person, of a property right belonging to another. (See Dior v. Milton, 9 Misc 2d 425, affd. 2 A D 2d 878; General Business Law, § 368-c; Federal Trade-Mark Act, 1946; U. S. Code, tit. 15, § 1051; Vaudable v. Montmarte, 20 Misc 2d 757.)
The proper test to be applied is whether the public is likely to be confused. In making purchases, the customer does not have the two sets of labels before him nor are the bottles side by side. The purchaser must rely upon his recollection of the product he intends to purchase. There is no doubt that the purchaser on a close examination of the defendants’ product and a comparison with the product of the plaintiff might find certain differences. However, purchases are not made in that manner and such a test would be unfair (Martini & Rossi v. Consumers’-People’s Prods. Co., 57 F 2d 599).
In cases such as this the protection of the law is not reserved for experts but is for the public which includes the ignorant, the unthinking and the credulous, who, in making purchases, do not stop to analyze but are governed by appearances and general impressions (Florence Mfg. Co. v. Dowd & Co., 178 F. 73, 75; Lever Bros. Co. v. Eavenson & Sons, 157 Misc. 297, 301).
It is the combination of features as a whole rather than a difference in some of the details which must determine whether *535 the competing product is likely to cause confusion in the mind of the public.
The plaintiff is clearly entitled to relief in view of what appears to be the deliberate copying by the defendants of the salient features of the plaintiff’s product “ Sominex ”, for the purpose of obtaining for its product the benefits of the advertising and the public demand for “ Sominex ”.
As to plaintiff’s product “ Geritol ”, the evidence is not so clear, and in the opinion of the court, plaintiff has failed to establish by a fair preponderance of the evidence that the defendants’ product “Getrin” unfairly competes with “Geritol”. “Geritol” and “Getrin” are derived from ‘ ‘ geriatrics ’ ’ which in turn is based on the Greek root11 geras ’ ’ meaning old age, and 1 ‘ iatrics ’ ’, which together constitute the subdivision of medicine concerned with old age and its diseases. Since the product itself was intended to appeal to older people, or persons suffering from debilities associated with advancing age and its concomitants, a trade name such as here used by both parties would appear to be descriptive of the product sold. The proof adduced at the trial, in fact, shows that products named “ Geratonic ”, “ Gerapan ”, “ Geriat ”, “ Geraton ” and “ Geratin ” are presently being manufactured and sold by defendants and others in this field. The expression 1 ‘ tired blood ” is emphasized by the plaintiff in advertising its product and is not used by the defendants. The colors on the labels, in fact the form of label itself used by the defendants, as well as the shape of the bottle, has been used by them on other products prior to the introduction of Geritol. It must be noted also that prior to the manufacture of “ Geritol ” similar products with almost identical names were marketed by others than the defendants which contained identical ingredients with “ Geritol ”. All in all, there is not a sufficient showing that defendants, in manufacturing and selling this product, did so with the intention of confusing the public so that it would purchase its product when actually intending to purchase plaintiff’s product.
It thus appears that the plaintiff is not entitled to injunctive relief so far as defendants’ product “ Getrin ” is concerned and the second cause of action is accordingly dismissed on the merits.
The plaintiff is entitled to judgment on its first cause of action in accordance with the foregoing. Settle judgment providing for appropriate injunctive relief, and for an accounting to ascertain the amount of damages, if any, occasioned by the defendants’ wrongful acts of unfair competition.
The foregoing constitutes the decision of the court as required by the pertinent provisions of the Civil Practice Act.