**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
October 11, 2012

No. 11-41105

Lyle W. Cayce
Clerk

GRUMA CORPORATION,

Plaintiff-Appellant

v.

MEXICAN RESTAURANTS, INC.,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas
(4:09-CV-488)

Before DAVIS, DENNIS, and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:[*]

Plaintiff Gruma Corporation, a manufacturer of Mexican food product which it markets nationwide under the MISSION trademark, sued the defendant Mexican Restaurants, Inc., owner of a chain of restaurants using the MISSION BURRITO mark, for infringement and dilution. The district court found no likelihood of confusion between the plaintiffs and defendants marks and no dilution and dismissed Gruma's case. Based on our conclusion that the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41105

district court erred in its legal analysis of these claims, and because proper application of the relevant factors favors Gruma, we reverse.

## I.

On September 22, 2009, Gruma, a manufacturer of Mexican food products sold nationally under the registered trademark MISSION, sued Mexican Restaurants, Inc., the owner of a chain of Mexican fast-casual restaurants operating in the Houston area. Gruma alleged trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. §§ 1114 & 1125(a)(1)(A), and dilution under the Texas Anti-Dilution statute, Tex. Bus. & Com. Code § 16.29.     Gruma manufactures and sells Mexican food products including tortillas, tortilla chips, taco shells, guacamole dip, and salsa under the trademark MISSION. Since 1982, Gruma has obtained 29 federally-registered trademarks, some with the word MISSION alone and some with the work MISSION in a logo. The MISSION logo includes the word MISSION under a Spanish style bell tower with a rounded top, usually using the colors red, orange and white. Gruma sells its products nationwide in grocery stores or other retail outlets, as well as directly to restaurants, schools and other institutions.

Mexican Restaurants owns several different Mexican concept restaurants in Texas and elsewhere, including the Houston based Mission Burrito restaurants. The Mission Burrito restaurants first started as Mission Burritos in 1995 and obtained a Texas trademark in 1997. The restaurants are considered fast-casual and serve tortilla chips, dips and salsa, and fresh tortilla-based Mexican food items such as burritos, tacos, and quesadillas. The MISSION BURRITO logo is the top of a Spanish mission style church topped by a cross in black and white. Throughout its existence, the title of the restaurant, MISSION BURRITO, has generally been followed by a tagline, first "Fresh Food Fast" and later "More choices. More flavor." Mexican Restaurants obtained a federal trademark for the logo and name in 2008.

No. 11-41105

Pursuant to Federal Rule of Civil Procedure 39(c), the district court convened an advisory jury in January 2011 to try issues relating to whether Mexican Restaurant's use of the MISSION BURRITO mark is likely to cause confusion with or dilution of Gruma's MISSION mark. The jury answered no to both issues. The district court issued findings of fact and conclusions of law on the issues, finding, like the advisory jury, that there was no likelihood of confusion or dilution between the parties' marks. Gruma appeals.

## II.

The district court found that Gruma failed to establish a likelihood of confusion between its MISSION trademark and Mexican Restaurant's MISSION BURRITO mark under federal law. We review questions of law de novo and questions of fact for clear error. *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 196 (5th Cir. 1998). The issue of likelihood of confusion is generally a fact question. *Id.*

> However, "the 'clearly erroneous' standard of review does not insulate factual findings premised upon an erroneous view of controlling legal principles." When a likelihood-of-confusion factual finding is "inextricably bound up" in, or infected by, a district court's erroneous view of the law, we may conduct a de novo review of the fully-developed record before us.

*Id.*(citing *Roto-Rooter Corp. v. O'Neal*, 513 F.2d 44, 46-47 (5th Cir. 1975) (reviewing the district court's fact-finding on a likelihood of confusion de novo where it applied the incorrect legal standard)) (other citations omitted).

## III.

The parties stipulated that Gruma owns a valid and protectible trademark in MISSION that predates Mexican Restaurant's use of MISSION BURRITO. Thus, in this trademark infringement action under the Lanham Act, the central question is whether Mexican Restaurant's use of the MISSION BURRITO mark is likely to cause confusion as to the "source, affiliation, or sponsorship" of

Mexican Restaurant's products and services. *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 473 (5th Cir. 2008). "Likelihood" means more than a possibility; the plaintiff must demonstrate a probability of confusion. *Id.* at 478. Case law is well settled that the court should examine eight nonexclusive "digits of confusion" to determine whether a likelihood of confusion is present:

> (1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers. No digit is dispositive, and the digits may weigh differently from case to case, "depending on the particular facts and circumstances involved." The court should consider all relevant evidence.

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009) (citations omitted). "The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the . . . factors." *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008) (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)) (quotations marks omitted).

Gruma argues that the district court correctly found that factors (1), (4), (5), and (8) favor Gruma, pointing to a likelihood of confusion. Mexican Restaurants does not challenge these findings. However, Gruma argues that the district court misapplied the law relating to factors (2) and (3), which should favor Gruma, and erred in not fully analyzing factors (6) and (7), which factors also favor Gruma or are at least neutral.

**Factors found in Gruma's Favor by the District Court** -

**(1) the type of trademark** - The district court found that this factor favored Gruma because the MISSION mark is strong and distinctive. This is so

No. 11-41105

because the mark is arbitrary, meaning that the use of the familiar word MISSION is used in an unfamiliar way (like Apple computers). The mark is also commercially strong because it has achieved a high degree of awareness in the marketplace. The mark is also in substantial exclusive use by Gruma, which weighs in Gruma's favor. This finding is clearly correct and is not challenged by Mexican Restaurants.

**(4) outlet and purchaser identity** - The district court found that although the parties do not use the same retail outlets to sell their goods and services, the consumers who purchase Gruma's retail products substantially overlap with the consumers who purchase Mexican Restaurant's products and services because both purchase Mexican food products. The likelihood of confusion increases when two users of the mark compete directly for end-users in the same market. *Xtreme Lashes, LLC*, 576 F.3d at 229. Again, the district court correctly found that this factor favors Gruma.

**(5) advertising media identity** - The district court found a significant identity in the advertising media used by the parties. The district court correctly found that this factor favors Gruma.

**(8) care exercised by potential purchasers** - The district court correctly found that because the parties' products are inexpensive they would not be purchased with a high degree of care as to their origin increasing risk of confusion. The district court correctly found that this factor favors Gruma.

**Disputed Factors** -

**(2) mark similarity** - The similarity of marks "is determined by comparing the marks' appearance, sound and meaning." *Elvis Presley Enters.*, 141 F.3d at 201. The ultimate question is "whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Xtreme Lashes, LLC,* 576 F.3d

No. 11-41105

at 228.  Gruma argues that the district court erred in its analysis of this factor by focusing on the differences between the two marks, rather than the similarities.  The district court noted that the MISSION BURRITO mark contains additional words, burrito and also "fresh food fast" or later "more choices, more flavor."  The district court also noted that the MISSION mark appears with a bell tower, where the MISSION BURRITO mark appears with the roof line of a mission style church.  Also MISSION uses bright colors and MISSION BURRITO generally uses black and white.

We agree with Gruma that the descriptive words attached to Mexican Restaurant's use of the word MISSION –(T.T.A.B.)  like "Burrito" and "Fresh Food Fast" or "More choices. More flavor" – are relatively unimportant when determining whether the marks are similar.  Rather, it is clear from cases from multiple sources that the dominant word or words in a mark should be the focus of the analysis.  In *In re Golden Griddle Pancake House Ltd.*, 17 U.S.P.Q. 2d 1074 (T.T.A.B. 1990)[1], the U.S. Patent and Trade Office's Trademark Trial and Appeal Board refused to register a mark for a pancake restaurant that wanted to use the name GOLDEN GRIDDLE PANCAKE HOUSE because it was substantially similar to a registered mark for pancake syrup, GOLDEN GRIDDLE.  The descriptive words "PANCAKE HOUSE" were not sufficient to differentiate the applicant's mark from GOLDEN GRIDDLE because the public would look to the other words in the name as the distinguishing feature or mark. *Id.*  Since those words, GOLDEN GRIDDLE, were identical to the trademarks, the registration was not allowed.  *Id.*

---

[1] This court and other federal circuits cite decisions by the TTAB as persuasive authority.  *See, e.g., Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 443 (5th Cir. 2000); see also *Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Ltd.*, 511 F.3d 437, 460 (4th Cir. 2007); *Star Indus., Inc. v. Bacardi & Co.,* 412 F.3d 373, 382 (2d Cir. 2005).

No. 11-41105

Similarly, in *In re Chatam International, Inc.,* 380 F.3d 1340, 1343 (Fed. Cir. 2004), the Federal Circuit compared the marks JOSE GASPAR GOLD and GASPAR's ALE by looking for the dominant feature in each mark.  The word ALE, like the words PANCAKE HOUSE, was descriptive or generic with respect to the involved goods or services. *Id.*  The word JOSE was not considered to alter the commercial impression of the mark as it reinforced the impression that GASPAR is an individual's name. *Id.* The term GOLD was determined to denote a premium quality, a descriptive term that also did not alter the commercial impression of the mark. *Id.*  That left the word GASPAR as the dominant feature of the mark.  As the word was identical in both trademarks, the marks conveyed a similar appearance, sound and commercial impression. *Id.*  As applied to our case, the word MISSION is the dominant feature of the two marks because the word BURRITO, like the words ALE and PANCAKE HOUSE, is merely descriptive or generic.  *See  Am. Century Proprietary Holdings v. Am. Century Cas. Co.*, 295 F. Appx. 630, 635-36 (5th Cir. 2008) (agreeing with district court's conclusion that the marks AMERICAN CENTURY CASUALTY COMPANY which often uses a tree logo and AMERICAN CENTURY PROPRIETARY HOLDINGS which uses an eagle logo are clearly similar.)  Also, it is clear that the dominant word in both marks, MISSION, sounds the same when spoken aloud. *Fuji Photo Film Co. v. Shinohara Shoji Kabushiki Kaisa*, 754 F.2d 591, 597 (5th Cir. 1985) (noting that auditory similarity is an important factor when determining likelihood of confusion.)

Gruma also argues that the district court improperly focused on the differences between the two marks rather than on their overall similarities.  As this court has explained:

> "The touchstone under [the Lanham Act] is … similarity in the overall trade dress of the products." *Sun-Fun Products*, supra, 656 F.2d at 192 (emphasis added). See also *Perfect Fit*, supra, 618 F.2d at 955 ("It is the "combination of features as a whole rather than a

No. 11-41105

difference in some of the details which must determine whether the competing product is likely to cause confusion in the mind of the public,' ") quoting *Pharmaceuticals, Inc. v. United Whelan Corp.*, 22 Misc.2d 532, 534-35, 197 N.Y.S.2d 22, 25 (Sup.Ct.1959). It was error to determine dissimilarity on the basis of a "close examination and comparison" in the face of close overall similarity. Accord, *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1060 (2d Cir. 1979).

*Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.*, 659 F.2d 695, 704 (5th Cir. Unit A 1981).

When we consider the similarities between Gruma's MISSION mark and Mexican Restaurant's MISSION BURRITO mark, both marks use the word MISSION in all caps and both use an image that clearly represents the tower of a mission style Spanish church. We find it inescapable that both are clearly employing the device of a mission-style tower associated with Mexico and South Texas to draw an association with the name MISSION and the Mexican food each party sells. In a somewhat similar case, *Aladdin Industries Inc. v. Alladin Lamp & Shade Corp.*, 556 F.2d 1263 (5th Cir. 1977), this court reversed the district court's finding of no likelihood of confusion noting, after factual errors were corrected, that both parties' marks were attempting to capitalize on an association with Aladdin's mythical lamp.

The district court found that "[i]n totality, the marks are not comparable in appearance, sound, or meaning" and "prospective purchasers are unlikely to believe that the parties are somehow associated." When we disregard the extra, descriptive words in Mexican Restaurant's mark and focus on the similarity of the two marks as the case law requires, we conclude that the district court erred in finding that this element favors Mexican Restaurant.

**(3) product similarity** - The district court found that although both parties are in the Mexican food industry, their goods do not compete. The district court also found that Mexican Restaurant's products are not similar to

No. 11-41105

Gruma's and that consumers would not think they originated from the same source.  Finally, the district court concluded that consumers would not believe that the restaurant business is a natural area of expansion for Gruma, given its long history of only providing grocery store products and that consumers would be unlikely to be confused about any sponsorship, affiliation or connection between Gruma's and Mexican Restaurants's products and services.  Based on these findings the district court concluded that this factor favored Mexican Restaurants.

"The greater the similarity between the products and services, the greater the likelihood of confusion."  *Elvis Presley Enters.*, 141 F.3d at 202 (internal quotation marks omitted).  The parties do not have to be direct competitors to establish a likelihood of confusion. *Id.*  "When products or services are noncompeting, the confusion at issue is one of sponsorship, affiliation, or connection."  *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000).

The distinction between pre-packaged food products sold in retail stores and finished food products sold in restaurants is not enough to show that products are dissimilar.  In *Beef/Eater Restaurants, Inc. v James Burrough, Ltd.*, 398 F.2d 637 (5th Cir. 1968), the court affirmed the district court's finding of likelihood of confusion on summary judgment between Beefeater Restaurants and Beefeater Gin.  "It is true that appellant operates a restaurant and appellees on the other hand make and vend gin.  Both are consumable and it is repeatedly held that the parties need not be in competition and that the goods or services need not be identical." *Id.* at 639.  In *In re Azteca Restaurant Enterprises, Inc.*, 50 U.S.P.Q. 2d 1209 (T.T.A.B. 1999), the T.T.A.B. affirmed the examiner's refusal to register the mark AZTECA MEXICAN RESTAURANT for a Mexican restaurant as it would likely cause confusion with the earlier registered mark for AZTECA prepared Mexican foods, because "consumers would be likely to

9

mistakenly believe that registrant's Mexican food products sold under the mark AZTECA and applicant's restaurant services sold under the mark AZTECA MEXICAN RESTAURANT originated with or are somehow associated with or sponsored by the same entity." *Id.* at 1212-13.  We have almost identical facts in this case.  Gruma sells essentially the same type of Mexican pre-packaged foods that appellee sells in its restaurants.

Neither the record nor case law support the district court's conclusion that the restaurant business is not a natural area of expansion for Gruma.  The danger of confusion increases when the junior user's market is one into which the senior mark may naturally expand.  *Westchester Media*, 214 F.3d at 666.  Actual intent to expand – or lack thereof – is not particularly probative of the natural zone of expansion.  *Elvis Presley Enters.*, 141 F.3d at 202.   Rather, consumer perception controls. *Id.*  Gruma presented evidence from a marketing survey that consumers in the region that includes Texas believe that the manufacturer of MISSION tortillas could operate restaurants.  Mexican Restaurants produced no contrary evidence.  Also the district court did not consider the possibility that MISSION BURRITO could expand into retail products to compete with Gruma's MISSION products.  *See Dr. Pepper / Seven Up, Inc. v. Krush Global Ltd.*, 2010 WL 3798500, at *7 (T.T.A.B. Sept. 13, 2010) (unpublished); *In re Golden Griddle Pancake House, Ltd.*, 17 U.S.P.Q. 2d at 1074 (restaurants frequently package some of their products for retail sale.).

Based on these facts and cases, the district court erred in marking this factor in favor of Mexican Restaurants.

**Neutral Factors** -

**(6) defendant's intent** - The district court found that Mexican Restaurants did not adopt its mark with the intent of copying Gruma's mark or benefitting from its reputation.  This finding is supported by the record.

No. 11-41105

Accordingly, this factor "drops out as immaterial." *Fuji Photo Film*, 754 F.2d at 598.

**(7) actual confusion** - The district court was unpersuaded that Gruma established actual confusion between the marks.  Evidence of actual confusion is not required for a finding of likelihood of confusion. *Smack Apparel*, 550 F.3d at 483.  Gruma argues that the district court failed to give its evidence of actual confusion any weight in the analysis.  But the district court was entitled to discredit Gruma's evidence – fairly vague testimony of two employees about encounters with customers.  We find no error in the district court's finding that this factor was neutral.

Based on the foregoing, every digit of confusion weighs in Gruma's favor or is neutral and no factor favors Mexican Restaurants.  Based on our careful review of the record and case law, we are left with the firm conviction that the district court's conclusion that there is no likelihood of confusion between the two trademarks in this care was clearly erroneous.  Accordingly we reverse the judgment of the district court on Gruma's Lanham Act claim.

IV.

The district court also found in favor of Mexican Restaurants on Gruma's claim under the Texas Anti-Dilution statute.  The relevant provision of the Texas Anti-Dilution Statute provides:

> A person may bring an action to enjoin an act likely to injure a business reputation or to dilute the distinctive quality of a mark registered under this chapter or Title 15, U.S.C., or a mark or trade name valid at common law, regardless of whether there is competition between the parties or confusion as to the source of goods or services.

Tex. Bus & Com. Code § 16.29.  To maintain a dilution claim, the plaintiff must establish (1) ownership of a distinctive mark, and (2) a likelihood of dilution. *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*,

11

No. 11-41105

53 S.W.3d 799, 811 (Tex. Ct. App. 2001); *Pebble Beach Co. v. Tour 18 I, Ltd.*, 942 F. Supp. 1513, 1564 (S.D. Tex. 1996), *aff'd as modified*, 155 F.3d 526 (5th Cir. 1998) (citing *Hormel Foods Corp. v. Jim Henson Productions, Inc.*, 73 F.3d 497, 506 (2nd Cir. 1996)).

> Dilution involves the gradual "whittling away" of a party's distinctive mark through unauthorized use by another. Even in the absence of consumer confusion, an unauthorized user's adoption of another's mark lessens that mark's capacity to identify the true owner's goods and services.

*Horseshoe Bay*, 53 S.W.3d at 812, (internal citations omitted). Dilution by blurring occurs when the defendant uses the plaintiff's trade name as his own, thereby weakening the senior user's ability to use the name as a unique identifier. *Express One Int'l., Inc. v. Steinbeck*, 53 S.W.3d 895, 899 (Tex. Ct. App. 2001); *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1081 (5th Cir. 1997) (Blurring is "a diminution in the uniqueness and individuality of the mark.")

The district court applied what Gruma characterizes as federal standards for dilution by blurring from the Federal Trademark Dilution Act using the following factors:

> To determine dilution by blurring, a court "may consider all relevant factors" including: the degree of similarity between the mark or trade name and the famous mark; the degree of inherent or acquired distinctiveness of the famous mark; the extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark; the degree of recognition of the famous mark; whether the user of the mark or trade name intended to create an association with the famous mark; and any actual association between the mark or trade name and the famous mark. 15 U.S.C. § 1125 (c)(2)(B).

*Dallas Cowboys Football Club, Ltd. v. Am.'s Team Props, Inc.*, 616 F. Supp. 2d 622, 642-43 (N.D. Tex. 2009). Even if we accept these factors as the appropriate test, the analysis favors Gruma. As explained above, there is a great degree of similarity between Mexican Restaurants's mark and Gruma's mark. We agree

No. 11-41105

with the district court that Gruma's mark is distinctive, is in substantial exclusive use, and has a high degree of recognition. Accordingly four of the six factors favor Gruma. In sum, these factors establish that Mexican Restaurants's use of the MISSION BURRITO mark "dilutes the distinctive quality" of Gruma's MISSION mark, as required by the Texas Statute, and "lessens that mark's capacity to identify the true owner's goods and services" which is the definition of dilution by blurring. *Horseshoe Bay*, 53 S.W.3d at 811-12. The district court erred by granting judgment on this issue against Gruma.

## V.

Based on the foregoing analysis, we reverse the judgment of the district court on Gruma's Lanham Act and Texas Anti-Dilution claims and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.