**AFFIRMED and Opinion Filed April 30, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-19-00245-CV

**KING AEROSPACE, INC. AND KING AEROSPACE COMMERCIAL CORPORATION, INC., Appellants**
**V.**
**RANDY KING D/B/A KING AVIATION DALLAS, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-12048**

## MEMORANDUM OPINION
Before Justices Molberg, Reichek, and Evans
Opinion by Justice Reichek

In this suit for trademark infringement, King Aerospace, Inc. and King

Aerospace Commercial Corporation ("KAC") appeal the trial court's take nothing

judgment in favor of Randy King d/b/a King Aviation Dallas. Bringing three issues,

KAC contends the trial court erred in (1) failing to file sufficiently specific findings

of fact and conclusions of law, (2) concluding Randall King[1] established priority of

use in the King Aviation marks, and (3) concluding there was no likelihood of

---

[1] Although the style of this case uses the name "Randy King," appellee was consistently referred to as "Randall" throughout the trial.

confusion between the King Aviation marks and King Aerospace marks.  After reviewing the record, we affirm the trial court's judgment.

## Factual Background

The following are the facts testified to at trial that are relevant to our disposition of this appeal.  In a trial before the court without a jury, Randall King testified he began brokering and selling airplanes in 1975 using the name King Aviation.  Randall[2] stated he added the word "Dallas" to the company name sometime around 1985 to identify its location and he and his father, Sam King, advertised and sold planes using the names King Aviation and King Aviation Dallas continuously from 1975 until the present.

In 1982, Randall formed the corporation King Aircraft Sales which also operated under the name King Aviation Services.  Although the name of the corporation was King Aircraft Sales, Randall stated the company used the name King Aviation Dallas in its advertising.  In 1988, Randall's father invested in the corporation and Randall gave him "full control" including all financial and management rights.  Randall could not recall what ownership interest he maintained in the company, but stated he gave Sam his power of attorney and Sam paid him a commission on the aircraft that he sold.  Beginning in 1992, the company began operating out of Sam's house.

---

[2] The parties in this case both have the last name King.  Accordingly, we refer to the parties by their first names to avoid confusion.

In 1993, Randall was involved in a near fatal aircraft accident that left him unable to work, or able to work only in a diminished capacity, until approximately March 2000. Randall stated he was partially paralyzed, in pain, and had memory problems requiring cognitive remediation. During that time, Randall did not sell any aircraft, but his father continued operating the company. Phil Jordan testified he began working with Sam in 1992 and, while Randall was recovering from the accident, Jordan helped Sam "take care of business." This included filing monthly forms identifying what planes they had bought and sold. Jordan further testified he had personally known Randall since 1988 and, since then, Randall always conducted business under the names King Aviation or King Aviation Dallas.

Mark Pledger testified he began servicing and installing electronics in aircraft in 1976 and he met Randall in the 1980s. Pledger stated he worked consistently with Randall and his father every month since they met and he continued to work consistently with Sam and Sam's secretary after Randall's accident. According to Pledger, Randall had used the names King Aviation and King Aviation Dallas for as long as he has known him.

In 1998, King Aircraft Sales forfeited its corporate status for failure to pay its franchise tax. One year later, while Randall was still recovering from the accident, he filed for personal bankruptcy. When asked at trial in this case why he did not list King Aircraft Sales as an asset in his bankruptcy filing, Randall stated it was because he was not actively involved with the company at that time. Randall further stated

that, after consulting with his attorney, they determined Randall did not meet the criteria for having an interest in the company that would require him to report it as an asset. When asked why he did not list the King Aviation trademarks as an asset, Randall responded that, although the marks had significant value to him, he did not feel they had any value separate from him and his affiliation with the company. Randall was discharged from bankruptcy in March 2000.

In August 2002, Randall filed articles of incorporation for King Aviation Dallas. Around this time, Randall also registered the internet domain name kingaviationdallas.com which he still maintains. The company's corporate status was forfeited in 2004 based on a failure to pay taxes.

In 2006, King Aviation Dallas moved out of Sam's house and into an office by the airport in Addison, Texas. The new office shared a parking lot with one of the offices of KAC. King Aviation Dallas and KAC operated offices across from each other for approximately seven years. In 2013, Sam passed away and Randall began operating the company out of his apartment.

KAC consists of two companies formed by Jerry King; the first created in 1993 and the second in 2004. KAC does not sell airplanes, but instead performs heavy maintenance, painting, and refurbishment on aircraft. Jerry stated he became aware of Randall and his business in the 1980s, before he started KAC.

Randall testified that, during the years King Aviation Dallas and KAC shared a parking lot, he may have received packages meant for KAC on occasions, and one

–4–

person came into his office asking if his office was KAC's corporate offices, but he never experienced any customer confusion between the two companies. Jerry stated that a waiter once asked him if he worked with Randall because he was wearing a shirt that had a KAC logo on it. In addition, Jerry's son experienced a problem when a representative of an airplane sales organization told his son not to speak with him because he thought Jerry's son was related to Randall.

In January 2011, Jerry had an attorney send Randall a letter demanding that Randall "cease and desist all use of the mark 'King Aviation' and 'King Aviation Dallas,' including conducting business under that name, operating a website under the name, advertising using the mark, and any other use of the marks in any manner whatsoever" by no later than January 25, 2011. The letter stated Randall's use of the name constituted an infringement of Jerry's "superior legal rights to use the marks and name." Randall continued to conduct business under the names King Aviation and King Aviation Dallas.

On December 5, 2013, KAC filed for registration of the service mark King Aerospace Commercial Corporation with the United States Patent and Trademark Office stating the mark was first used in April 2004. On September 5, 2014, KAC filed for registration of the service mark King Aerospace, Inc. stating the mark was first used in January 1992. Registrations for both marks were issued in 2015.

In the summer of 2015, a constable came to Jerry's office and attempted to serve him with papers intended for Randall. Jerry stated this occurrence prompted

him to have his lawyer send Randall a second cease and desist letter demanding he stop all use of the names King Aviation and King Aviation Dallas by September 24, 2015. When Randall did not do so, KAC brought this suit.

In its first amended petition, KAC asserted claims for common law and federal statutory trademark infringement, false designation of origin, and unfair competition. KAC requested that Randall be enjoined from using the names King Aviation, King Aviation Dallas, or any mark having the word "King" in it in connection with the sale of goods or services. Randall answered and asserted affirmative defenses including waiver, laches, statute of limitations, and the failure to mitigate damages.

A bench trial was conducted in October 2018. After presenting their evidence, both sides submitted post-trial briefs. KAC argued it was entitled to judgment in its favor because (1) Randall failed to offer any evidence to rebut KAC's evidence of actual confusion caused by the similarity in their marks, (2) Randall offered no corroborating evidence that he had been using the name King Aviation continuously since 1975, (3) Randall abandoned the use of all his marks after his accident in 1993, and (4) Randall's bankruptcy precluded him from asserting any claim to priority of use. Randall responded that he had the priority right to the trademarks based on his use of them since 1975 and he did not abandon the marks following his accident. Randall further contended that KAC failed to offer any evidence of actual customer

confusion or the likelihood of irreparable harm resulting from his continued use of the names King Aviation and King Aviation Dallas.

On November 30, 2018, the trial court rendered judgment that KAC take nothing by its claims, and all causes of action against Randall were dismissed with prejudice. The court signed its findings of fact and conclusions of law two weeks later. Among the court's findings were the following:

> The credible evidence establishes by a preponderance of the evidence that [Randall] began use in Dallas County, Texas of the name "KING AVIATION" prior to any use of the name "KING AEROSPACE" by the Plaintiff's in Dallas County.
>
> The credible evidence establishes by a preponderance of the evidence that [Randall], or those acting on his behalf, has continuously used the name KING AVIATION or some variation thereof from 1975 to the present.
>
> The credible evidence establishes by a preponderance of the evidence that [Randall] did not abandon his use of the mark "KING AVIATION" or "KING AVIATION DALLAS."
>
> The credible evidence establishes by a preponderance of the evidence that [Randall] did not intend to abandon his use of the mark "KING AVIATION" or "KING AVIATION DALLAS."

Based on those findings, the court concluded Randall had established prior common law rights in the names "King Aviation" and "King Aviation Dallas" and any trademark rights held by KAC were subject to those previously established rights. The court made additional findings and conclusions regarding the absence of any confusion created by Randall's use of the marks.

On December 27, 2018, KAC filed a request for amended findings of fact and conclusions of law and submitted proposed amended findings. Shortly thereafter, the trial judge who presided over the case left the bench. The request for amended findings and conclusions was forwarded to the former judge by his successor, and the former judge responded that he had "no further additional or amended findings of fact or conclusions of law to make in this case." KAC then brought this appeal.

## Analysis

### I. Trademark Infringement and Priority

KAC asserts three issues challenging the trial court's judgment and its refusal to make amended findings of fact and conclusions of law. We begin with KAC's challenge to the trial court's determination that Randall established prior common law rights to the names King Aviation and King Aviation Dallas.[3]

The issues in a common law trademark infringement action are the same as those under federal trademark law. *All Am. Builders, Inc. v. All Am. Siding of Dallas, Inc.*, 991 S.W.2d 484, 488 (Tex. App.—Fort Worth 1999, no pet.). To succeed on a claim for trademark infringement, the party seeking an injunction must show: (1)

---

[3] In its reply brief, KAC contends Randall's responsive brief on appeal, filed pro se, "provides nothing for this Court to review" because it fails to cite to the appellate record or legal authority. In his response, Randall informed the Court he was unable to find appellate counsel and he submitted his trial counsel's post-trial brief as his response to KAC's appellate arguments. KAC, as the appellant, has the burden to show grounds for reversal on appeal. *See Tijerna v. Wysong*, No. 14-15-00188-CV, 2017 WL 506779, at *2 (Tex. App.—Houston [14th Dist.] Feb. 7, 2017, no pet.). Randall, as appellee, was not required to file a brief for us to review what was presented to the trial court; thus, he cannot be said to have committed "waiver" due to inadequate briefing. *Id.*

the name it seeks to protect is eligible for protection; (2) it is the senior user of the name; (3) there is a likelihood of confusion between its mark and that of its competitor; and (4) the likelihood of confusion will cause irreparable injury for which there is no adequate legal remedy. *Id.* The party who first appropriates a mark through use, and for whom the mark serves as a designation of source, acquires superior rights to it. *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d. 427, 434 (7th Cir. 1999). "Use" is the continuous introduction of the mark into the stream of commerce. *In re Home Interiors & Gifts, Inc.*, No. 08-31961-11-BJH, 2008 WL 4772102, at *5 (Bankr. N.D. Tex. Oct. 9, 2008). A mark is deemed to be in use in commerce when it is used or displayed in the sale or advertising of services rendered in commerce. 15 U.S.C. § 1127. Evidence of actual sales is unnecessary. *Johnny Blastoff*, 188 F.3d at 434. The nonregistered rights of a senior user are not erased by the later federal registration of a junior user. *Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.*, 616 F. Supp.2d 622, 633 (N.D. Tex. 2009). In addition, as a general rule, there can be no exclusive appropriation of a family surname to the exclusion of those who possess the same surname. *Thompson v. Thompson Air Conditioning and Heating, Inc.*, 884 S.W.2d 555, 559 (Tex. App.— Texarkana 1994, no writ).

KAC contends the trial court erred in concluding the evidence showed Randall made deliberate and continuous prior use of the marks "King Aviation" and "King Aviation Dallas" sufficient to establish the priority of those marks. The

–9–

determination of prior use of a service mark is a mixed question of law and fact. *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350, 355 (6th Cir. 1998). The trial court's findings of fact following a bench trial carry the same weight as a jury's answers to jury questions. *Horseshoe Bay Resort Sales Co., v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 806 (Tex. App.— Austin 2001, pet. denied).[4] We will not substitute our judgment for that of the trier of fact merely because we would reach a different conclusion. *Id.* We review de novo the legal conclusion that a defendant's prior use was sufficient to establish priority. *Allard*, 146 F.3d at 355.

KAC contends there is no competent evidence to support the trial court's finding that Randall "used the name King Aviation or some variation thereof from 1975 to the present." KAC stresses the fact that Randall offered no documentary evidence to support his oral testimony. Oral testimony regarding use of a mark is "obviously strengthened by corroborative documentary evidence" and, absent corroboration, should be "carefully scrutinized." *Crystal Entm't & Filmworks, Inc. v. Jurado*, 643 F.3d 1313, 1322 (11th Cir. 2011). However, the testimony of even a single witness may suffice to prove priority if it carries with it "conviction of its

---

[4] In its conclusions of law, the trial court made the following statements: "The Plaintiffs' burden of proof in this case was to establish the elements of their causes of action by a preponderance of the evidence. 'Preponderance of the evidence' means the greater weight of credible evidence admitted in the case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, the trier of fact must find that the fact is more likely true than not true." KAC does not challenge these conclusions on appeal.

accuracy and applicability" and is not "characterized by contradictions, inconsistencies, and indefiniteness." *Id.*

In this case, Randall testified repeatedly and consistently that he began using the King Aviation mark in 1975 and that he added the word "Dallas" to the mark sometime around 1985. Randall further testified he and his father used both marks concurrently in their advertising for the business. KAC put into evidence a website printout with the heading "King Aviation Dallas" with "Since 1975" written underneath.

In addition to Randall's testimony, Mark Pledger testified he met Randall in the early 1980s and that Randall had used the marks King Aviation and King Aviation Dallas for as long as he had known him. Phil Jordan also met Randall and Sam in the 1980s and, although he could not remember whether Randall used the King Aviation Dallas mark before the company moved to the office in Addison, he knew that Randall had been using the King Aviation mark from the time they met.

KAC contends Randall's testimony contained inconsistencies and contradictions. KAC characterizes Randall's statement that "King Aviation in Dallas and King Aviation Dallas to me is the same thing" as equivocal. We disagree. Randall's testimony that he considered the King Aviation mark with a Dallas address written beneath it as making the same impression as the King Aviation Dallas mark explains and supports his testimony that he used both marks concurrently. Nothing in this statement contradicts both his and Pledger's testimony that he began using

–11–

the King Aviation mark in 1975 and the King Aviation Dallas mark in the mid-1980s.

KAC also contends Randall's testimony that he began using the King Aviation Dallas mark around 1985 was contradicted by Jordan's testimony that he did not remember Randall using the name King Aviation Dallas until 2006 when Randall moved the company's operations out of his Father's house and into the office in Addison. Jordan's actual testimony was that he specifically remembered Randall using the King Aviation Dallas mark in an advertisement after he moved to the Addison office, but he could not remember if he had used that mark earlier. Jordan also testified he remembered Randall using the King Aviation mark "going back a long time, 1988/1989." Jordan's inability to remember whether Randall used the mark King Aviation Dallas before 2006 does not contradict Randall's and Pledger's testimony that he did. Indeed, it is clear that Randall used the name King Aviation Dallas before 2006 as he incorporated King Aviation Dallas in 2002.

KAC points to the incorporation of King Aviation Dallas in 2002 as evidence that the King Aviation Dallas mark was not used until then. But use of the name for incorporation purposes is not the same as use of the mark in commerce. The choice to use King Aviation Dallas as the official name for the corporation in 2002 does not contradict Randall's testimony that he used the mark earlier in the company's advertising.

Finally, KAC contends Randall's testimony was inconsistent and contradictory because, despite claiming to have documentary evidence to show his use of the marks, Randall never introduced this evidence at trial. The testimony to which KAC refers is the following:

> Q: Did you provide any evidence of it?
>
> A: I have it right there.
>
> Q: But you haven't produced it.
>
> A: We haven't had time. We went straight to court this morning. But you knew that I prepared it for you yesterday. We talked about it.
>
> Q: Well, you never gave it to me.
>
> A: It's right there. I'd be glad to show it to you.
>
> Q: You never tried to introduce it as evidence today.
>
> A: It's not over.

The record does not contain any exhibits offered by Randall. We will not speculate about the reasons Randall's trial counsel chose not to introduce any documents at trial. Randall's testimony suggests, however, that the issues with his documentary evidence, if any, had to do with discovery and production rather than Randall's accuracy and credibility. As discussed above, documentary evidence, though helpful, is not required. After careful scrutiny of the record, we conclude Randall's testimony, as corroborated by the testimony of others, was sufficient to show use of the King Aviation marks began in 1975, prior to KAC's use of the King Aerospace marks, which began in 1992.

KAC contends that, even if Randall began using the King Aviation mark in 1975, that date would not apply to the King Aviation Dallas mark because the marks are too dissimilar to be subject to "tacking" for purposes of priority. A trademark owner may claim priority in a mark based on the use date of a similar, but technically distinct mark only in the narrow instance where the previously used mark is the legal equivalent of the mark in question or indistinguishable to the point that consumers consider both to be same mark. *One Indus., LLC v. Jim O'Neal Distrib., Inc.*, 578 F.3d 1154, 1160 (9th Cir. 2009). In this case, the trial court specifically declined to make KAC's requested findings regarding the application of the tacking doctrine. Accordingly, we cannot presume the court found this doctrine applied. *See Davey v. Shaw*, 225 S.W.3d 843, 857 (Tex. App.—Dallas 2007, no pet.). Instead, the trial court concluded that Randall had prior common law rights in the King Aviation Dallas mark and that these rights were not abandoned. We can presume, therefore, that the trial court found Randall began using the King Aviation Dallas mark before KAC's first use of the King Aerospace marks, which is supported by the evidence showing Randall began using the mark in the mid-1980s, prior to KAC's first use of a King Aerospace mark in 1992.

KAC next argues that, even if Randall established prior use of his marks, he abandoned his use of them after his accident in 1993. A party trying to show abandonment must prove that the owner of the mark both discontinued use of it and that he did not intend to resume its use in the reasonably foreseeable future. *Condom*

–14–

*Sense, Inc. v. Alshalabi*, 390 S.W.3d 734, 751 (Tex. App.—Dallas 2012, no pet.). Nonuse of a mark for a period of three consecutive years creates a rebuttable presumption that a mark has been abandoned without intent to resume its use. *Id*. at 752. The presumption shifts the burden to the mark owner to produce evidence of actual use during the relevant time period or intent to resume use of the mark. *Id*. This means the owner must proffer sufficient evidence to support a reasonable finding by the fact finder of the "nonexistence of the presumed fact." *Id*. Valid reasons for non-use will rebut a presumption of abandonment. *Star-Kist Foods, Inc. v. P.J. Rhodes & Co.*, 769 F.2d 1393, 1396 (9th Cir. 1985) (no abandonment where owner ceased using mark during period of unprofitability but intended and did resume use when profits could be made again).

KAC contends it made a prima facie case of abandonment because Randall admitted he did not make any aircraft sales from 1993 until at least 2000. Although Randall testified he did not personally sell any aircraft while he was recovering from his near-fatal accident, he also testified his father, Sam, was conducting the business of the company during that time. Jordan testified that, while Randall was recovering, he helped Sam file monthly reports identifying what airplanes they owned, when they bought them, and when they sold them. This evidence shows the marks continued to be used in commerce during the period of time KAC says they were abandoned.

Even assuming no sales took place, Randall's injuries would constitute a valid reason for a temporary cessation in sales. The fact that Sam continued the business of the company, and Randall resumed selling planes using the names King Aviation and King Aviation Dallas as soon as he was able to do so, is evidence of his intent to resume use of the marks. We conclude Randall presented sufficient evidence to rebut any presumption of abandonment and to support the trial court's findings that he neither abandoned the marks nor intended to abandon the marks.

Finally, KAC contends Randall's bankruptcy prevents him from claiming priority of use of the marks. KAC relies on the premise that, by failing to disclose the King Aviation and King Aviation Dallas marks as assets during his personal bankruptcy, those assets remained the property of the bankruptcy estate subject to administration after discharge. As a result, according to KAC, Randall does not have "standing" to assert priority. Even assuming Randall was required to disclose his interest in the King Aviation marks in his bankruptcy proceeding, a matter we do not and need not address, KAC cites no authority holding that his failure to do so had any bearing on his "standing" to assert priority of the marks in a suit against him for trademark infringement. The only case KAC cites addressing the effect of a bankruptcy proceeding on a party's rights in trademark litigation is *Guaranty Residential Lending, Inc. v. Homestead Mortgage Co., L.L.C.*, 291 Fed. Appx. 734 (6th Cir. 2008). This case does not support KAC's position.

In *Guaranty Residential*, the Sixth Circuit Court addressed the standing and capacity of the defendants in a trademark misappropriation suit to bring affirmative counterclaims premised on their rights to a trademark. *Id.* at 735. The plaintiffs moved to dismiss the counterclaims on the basis that one of the defendants failed to schedule his interest in the mark in an earlier bankruptcy proceeding and, therefore, did not have standing or capacity to assert an affirmative claim that could only be brought by the bankruptcy trustee. *Id*. at 736. In its opinion, the court explicitly stated it was addressing only the defendants' ability to bring affirmative counterclaims (ultimately concluding they did) and noted that the plaintiff's claims against the defendants for trademark misappropriation were "not germane to [the] appeal." *Id*. Accordingly, nothing in the opinion addressed how the failure to list the trademark as an asset in a bankruptcy proceeding affected a defendant's ability to assert a priority defense against a later asserted trademark infringement claim.

KAC makes no argument and cites no authority holding that a failure to schedule a trademark as an asset in a bankruptcy proceeding results in a non-use abandonment of the trademark or a forfeiture of the mark's priority status. KAC also does not explain how Randall lacked "standing" as a defendant to contend his use of the King Aviation marks could not infringe on KAC's trademark rights because the King Aviation marks had priority. Accordingly, KAC has failed to show how Randall's bankruptcy was relevant to the trial court's resolution of its trademark infringement claims.

Based on the foregoing, we conclude the trial court properly held that KAC was not the senior user of the disputed marks. We resolve KAC's second issue against it.

## II. Findings of Fact and Conclusions of Law

In its first issue, KAC contends the trial court's findings of fact and conclusions of law were not made with "sufficient specificity to assist the appellate court's review and to afford a clear understanding of the trial court's decision." KAC asserts the court's failure to make the amended findings it requested was reversible error.

A party may request additional or amended findings of fact and conclusions of law if the party believes the court's findings and conclusions are deficient in some way. *Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 88 (Tex. App.—Houston [14th Dist.] 2019, pet. filed). The trial court has no duty, however, to make additional or amended findings that are unnecessary or contrary to its judgment. *Id*. A trial court is only required to make additional findings and conclusions that are appropriate. *Id*. The failure to make additional findings and conclusions may constitute reversible error if the appellant is prevented from adequately presenting the matter being complained of on appeal. *Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 256 (Tex. App.—Houston [14th Dist.] 1999, pet. denied).

With respect to the trial court's findings concerning priority of use, KAC contends the finding that Randall "continuously used the name King Aviation or

some variation thereof from 1975 to the present" is "vague and conclusory" and does not address when specific marks were used or whether they created the same, continuous, commercial impression. The amended finding KAC requested the trial court make stated,

> At all times since he began using his mark in 1975, Defendant was the owner of his KING AVIATION marks and variations that he used. Defendant changed his mark multiple times since he first began doing business and did not begin using the current version of his mark KING AVIATION DALLAS until at least 2002. Despite the changes in the name, KING AVIATION gives the same commercial impression as KING AVIATION DALLAS and therefore under the tacking doctrine, Defendant is entitled to claim priority for KING AVIATION DALLAS back to his first use of KING AVIATION that was prior to Plaintiffs' first use of the KING AEROSPACE marks.

The only two marks at issue in this case were King Aviation and King Aviation Dallas. Although the trial court made no specific finding regarding the date Randall began using the King Aviation Dallas mark, it concluded Randall had prior common law rights in that mark. KAC's contention that the trial court was required to make more specific findings regarding the tacking doctrine is misplaced because, as discussed above, application of that doctrine was not required for the trial court to conclude the King Aviation Dallas mark had priority. The evidence supports a finding that Randall began using the mark before KAC's first use of the King Aerospace marks. Accordingly, the finding requested by KAC was not only unnecessary, but contrary to the evidence and the trial court's presumed finding.

–19–

KAC further complains that the trial court's findings are "devoid of any discussion whatsoever" on the effect of Randall's failure to list the King Aviation marks as assets in his personal bankruptcy. Additional findings and conclusions may be required only if they relate to ultimate or controlling issues. *Rich v. Olah*, 274 S.W.3d 878, 886 (Tex. App.—Dallas 2008, no pet.). Because Randall's bankruptcy had no bearing on the trademark infringement claims made against him, no findings on that matter were required.

KAC argues the trial court's findings are deficient because they fail to specify how Randall used the marks in commerce and the effect of Randall's inability to work after his accident. The trial court found that Randall continuously used the King Aviation marks and neither abandoned them nor intended to abandon them. These findings sufficiently address the controlling issues and are all that is required. *See id.* The additional findings requested by KAC merely pertain to evidentiary matters and are unnecessary. *See id.*

The trial court made findings on all the controlling issues and KAC was not left to guess at the reasons for its judgment. KAC could, and did, thoroughly present its arguments challenging the trial court's judgment on appeal. We resolve KAC's first issue against it.

Because of our resolution of the issues pertaining to the priority of the King Aviation marks, it is unnecessary for us to address KAC's issues and arguments pertaining to the likelihood of confusion.  We affirm the trial court's judgment.


/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

190245F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

KING AEROSPACE, INC. AND
KING AEROSPACE
COMMERCIAL CORPORATION,
INC., Appellants

No. 05-19-00245-CV V.

RANDY KING D/B/A KING
AVIATION DALLAS, Appellee

On Appeal from the 160th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-15-12048.
Opinion delivered by Justice
Reichek. Justices Molberg and Evans
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee RANDY KING D/B/A KING AVIATION DALLAS recover his costs of this appeal from appellants KING AEROSPACE, INC. AND KING AEROSPACE COMMERCIAL CORPORATION, INC.

Judgment entered April 30, 2020